UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS GUNTLE JR.,

        Plaintiff,                                  Hon. Sally J. Berens

v.                                                                            Case No. 1:23-cv-227

VAN BUREN COUNTY JAIL, et al.,

        Defendants.
_____/

**OPINION**

Plaintiff Travis Guntle, Jr. filed a pro se complaint on March 6, 2023, pursuant to 42 U.S.C. § 1983 against the Van Buren County Jail (VBCJ), Sergeant Johnson, and Sergeant Small, based on events that occurred on October 7, 2022, while Plaintiff was held at the VBCJ.[1] After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court dismissed the VBCJ and allowed Plaintiff's excessive force claims against Defendants Johnson and Small to proceed. (ECF Nos. 7 and 8.)

Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 23.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[2] Generally, where the non-moving party fails to respond to a

---

[1] In his complaint, Plaintiff alleged that the events occurred on October 4, 2022. (ECF No. 1.) However, the evidence Defendants submit in support of their motion shows that the events occurred on October 7, 2022.

[2] Defendants originally served their motion and brief on Plaintiff at the Cass County Jail on September 18, 2023. (ECF No. 26.) After the Cass County Jail informed defense counsel that Plaintiff had been transferred to the Elkhart Correctional Complex in Elkhart, Indiana, Defendants served their motion and brief on Plaintiff at that facility on September 19, 2023. (ECF No. 27.)

motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Having reviewed Defendants' motion and evidence in accordance with the foregoing standard, the Court will **GRANT** the motion.[3]

## I. Background

On October 7, 2022, Plaintiff was detained at the VBCJ following extradition from Elkhart, Indiana, on a warrant out of Van Buren County, Michigan, for failure to register as a sex offender. (ECF No. 24-1 at PageID.64.) Around that date, another inmate had alleged to jail officials that Plaintiff had stolen his phone pin number and charging cord. (*Id.* at PageID.65.) Defendant Johnson and another corrections officer went to Plaintiff's cell to speak with him about the allegations. During the interaction, they instructed Plaintiff to pack his belongings in his cell and told him that he would be moved to a segregation cell. (*Id.* at PageID.66) Plaintiff initially packed his belongings but then sat down at a table inside the cell and demanded to see the lieutenant. Defendant Johnson and the other officer denied Plaintiff's request. Plaintiff continued to sit at the table with his arms across it and refused to stand up and exit the cell. (*Id.* at PageID.66–67.) Defendant Johnson warned Plaintiff that, if he did not comply, officers would use force to remove him. (*Id.* at PageID.67; ECF No. 24-2 at PageID.72.) When Plaintiff failed to comply, Johnson deployed a one-second burst of O/C spray toward the eyebrow area of Plaintiff's face and

---

Subsequently, defense counsel learned that Plaintiff was residing in Three Rivers, Michigan, and served the motion and brief on Plaintiff at that address on October 27, 2023. (ECF No. 30.)

[3] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the undersigned conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters. (ECF Nos. 4 and 17.)

handcuffed him. However, Plaintiff actively resisted the officers' attempts to remove him from the cell. (*Id.*)

Defendant Johnson told another officer to retrieve a restraint chair. When Defendant Small arrived at the cell with the chair, he assisted Defendant Johnson and other officers in removing Plaintiff from the cell and securing him in the restraint chair. (*Id.*) Plaintiff was transported to the booking area, where medical staff examined him. Although Plaintiff refused to open his mouth, the nurse found no significant issues. (EF No. 24-3.)

Defendant Johnson asked Plaintiff if he would like to be decontaminated from the spray, but Plaintiff did not respond. Plaintiff was taken to a holding cell, where he was checked every 15 minutes during the approximately two hours that he remained in the restraint chair. (ECF No. 24-4.) At 6:34 p.m., Defendants and another officer went to the holding cell and performed a cuff switch and capillary check on Plaintiff. (ECF No. 24-2 at PageID.73.) After Plaintiff was removed from the restraint chair, he was taken to the shower and then placed in a segregation cell. (ECF No. 24-1 at PageID.69.) Although Plaintiff claims that he received a black eye from the incident (*id.* at PageID.68), another nurse examined him the following day and found no visible injury from the incident. (ECF No. 24-6.) On October 9, 2022, Plaintiff pled guilty to several disciplinary charges and received punishment of 15 days in segregation. (ECF No. 24-7.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

3

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

Defendants contend that they are entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).[4]

---

[4] For their first argument, Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. The Court finds this argument meritless

4

A.      **Excessive Force**

Defendants contend that they did not violate Plaintiff's Fourth Amendment rights by using excessive force in removing him from the cell. (ECF No. 24 at PageID.50–55.) However, because Plaintiff was detained pursuant to a warrant, and thus had received a probable cause determination, the Fourteenth Amendment provides the proper framework for resolving Plaintiff's excessive force claim. *See Colson v. City of Alcoa*, 37 F.4th 1182, 1187 (6th Cir. 2022) (noting that under *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Fourteenth Amendment applies to "a person who has received a judicial determination of probable cause but has not yet been adjudicated guilty of a crime"). The relevant inquiry, therefore, is whether the force purposefully or knowingly used was objectively reasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). This inquiry is "highly fact-dependent" and "must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley v. Lucas County,* 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. at 397). The inquiry

---

because it is based on Plaintiff's failure to appeal the disciplinary hearing outcome. (ECF No. 24 at PageID.49.) To begin, Defendants fail to present evidence that the VBCJ has an administrative grievance policy or procedure. Because Defendants bear the burden of proof on the issue of exhaustion, failure to demonstrate the existence of a policy or procedure in the first instance is fatal to the argument. Moreover, the disciplinary hearing report (ECF No. 24-7) does not embody the excessive force/denial of medical care claims Plaintiff presents in this case. The Court is aware of no authority holding that a prisoner must exhaust excessive force or denial of medical care claims by appealing a misconduct finding. While cases from both Michigan federal districts hold that a prisoner incarcerated with the Michigan Department of Corrections (MDOC) must, pursuant to the MDOC's grievance procedure, exhaust a retaliatory misconduct ticket by raising the issue in the misconduct hearing and then appealing any adverse decision, *see*, *e.g.*, *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019) (concluding that the plaintiff failed to exhaust because he "failed to assert any fact that could support a claim of retaliatory action at the time of his misconduct hearing, and he did not petition to reopen his hearing"); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (concluding that the plaintiff failed to properly exhaust because he "did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing as required by MDOC Policy Directive 03.03.150 at VVV"), Plaintiff is not asserting that the disciplinary charges were retaliatory.

5

must consider the government's "legitimate interests" in managing correctional facilities "to preserve internal order and discipline and to maintain institutional security." *Coley*, 799 F.3d at 538 (internal quotations omitted).

To the extent that Plaintiff contends that the brief one-second burst of chemical spray that Defendant Johnson used on him to gain compliance was excessive, it is well established that, in the prison or jail setting, chemical spray is a constitutionally-permissible application of force when used to restore order or to gain an inmate's compliance. For example, in *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004), the Sixth Circuit held that the defendant corrections officers did not violate the Eighth Amendment by using pepper spray on the plaintiff when he refused their repeated orders to leave the shower. In *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the court noted that it has repeatedly held that "'the use of . . . chemical agents against recalcitrant prisoners'" does not violate the constitution. *Id.* at 406 (quoting *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)). Here, the evidence, which is not in dispute, shows that, despite Defendant Johnson's order to exit the cell, Plaintiff remained at the table with his hands across the table as he refused to comply with the order. Defendant Johnson's use of a brief burst of O/C spray—after warning Plaintiff that force would be used to remove him if he did not comply—was objectively reasonable. *See Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (holding that the defendants' use of pepper spray after the plaintiff refused to obey their orders to stand up and leave a strip cage was not unreasonable); *Sears v. Bates*, No. 6:18-CV-234, 2020 WL 5996419, at *8 (E.D. Ky. Oct. 9, 2020) (concluding that the defendant's one-time use of O/C pepper spray was not objectively unreasonable force). Defendants are thus entitled to qualified immunity on both prongs of qualified immunity for the use of O/C spray, as Plaintiff fails to

6

establish a constitutional violation, and the law on a one-time use of chemical spray to gain a prisoner's compliance was not clearly established.

As for Defendants' actions following the use of O/C spray—handcuffing Plaintiff and placing him in a restraint chair for, at most, two hours—Defendants are entitled to qualified immunity because Plaintiff fails to demonstrate a violation of clearly established law. As noted above, following Defendant Johnson's use of the O/C spray, Plaintiff actively resisted the officers' attempts to remove him from the cell. Under these circumstances, use of handcuffs to secure Plaintiff as he was removed from the cell was objectively reasonable. Likewise, Defendants did not violate Plaintiff's clearly established constitutional rights by confining him to the restraint chair for no more than two hours. *See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 533 (6th Cir. 2018) (concluding that the plaintiff failed to meet his summary judgment burden of demonstrating that use of a restraint chair for three hours violated clearly established law); *Rodriguez Ortiz v. Jefferson Cnty.*, No. 3:17-cv-401, 2019 WL 5932757, at *8 (E.D. Tenn. Nov. 12, 2019) (use of restraint chair for over three hours, in violation of the county's two-hour limit policy, did not violate clearly established law). Moreover, it is undisputed that during the time Plaintiff remained in the restraint chair, he was monitored every fifteen minutes, and Defendants specifically performed a cuff switch and a capillary check on him at 6:34 p.m. Thus, Defendants are entitled to summary judgment on the excessive force claim.

    B.    **Denial of Medical Care**

At the screening stage, the Court determined that Plaintiff alleged only an excessive force claim. Out of an abundance of caution, however, Defendants move for summary judgment on any deliberate-indifference-to-medical-care claim Plaintiff may assert. Under Sixth Circuit caselaw, a jail official violates the Fourteenth Amendment's Due Process clause if he is deliberately indifferent to a pretrial detainee's serious medical need. *Greene v. Crawford Cnty.*, 22 F.4th 593,

605 (6th Cir. 2022). To satisfy this standard, a plaintiff must show that: (1) he had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the jail official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk. *Trozzi v. Lake Cnty.*, 29 F.4th 745, 757–58 (6th Cir. 2022).

Any deliberate indifference claim fails on all three elements. First, courts have found that the normal effects from O/C spray do not amount to a serious medical need. *See*, *e.g.*, *Armour v. Horton*, No. 2:21-cv-204, 2022 WL 354521, at *5 (W.D. Mich. Feb. 7, 2022) (holding that when a prisoner complains of difficulty breathing due to exposure to chemical agent, "difficulty breathing would be expected and does not suffice to show a serious medical need"); *McDougald v. Eaches*, No. 1:16-CV-900, 2018 WL 3966245, at *5 (S.D. Ohio Aug. 17, 2018) ("breathing problems and burning sensations" from pepper spray did not establish a serious medical need); *Censke v. Ekdahl*, No. 2:08-CV-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (holding that the plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do not constitute a serious medical need"). Second, there is no indication that either Defendant was aware of any fact suggesting that Plaintiff's medical need put him at an excessive risk of harm. As noted, after Plaintiff was removed from the cell, a nurse evaluated him and found no indication that he needed medical care. Moreover, Plaintiff failed to respond to Defendant Johnson's inquiry whether Plaintiff wished to be decontaminated from the chemical spray. Finally, Defendants did not ignore a known serious risk to Plaintiff's health. As noted, Defendants and other officers checked on Plaintiff every 15 minutes, and at the conclusion of his time in the restraint chair, allowed him to

8

shower before placing him in segregation. Thus, to the extent Plaintiff alleges a denial-of-medical-care claim, it is meritless.

## IV.   Conclusion

For the reasons set forth above, the Court will **grant** Defendants' Motion for Summary Judgment (ECF No. 23) and dismiss Plaintiff's complaint with prejudice.

A separate Order consistent with this Opinion will be entered.

Dated: December 18, 2023      /s/ Sally J. Berens
　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　U.S. Magistrate Judge